UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

BRAUN BUILDERS, INC.,

       Plaintiff,

v.

       Case Number 09-11534-BC
       Honorable Thomas L. Ludington

VIVKEKANAND KANCHERLAPALLI,
SHARON KANCHERLAPALLI, THUMB
NATIONAL MORTGAGE, and
U.S. INTERNAL REVENUE SERVICE,

       Defendants,

and

VIVKEKANAND KANCHERLAPALLI
and SHARON KANCHERLAPALLI,

       Third-Party Plaintiffs,

v.

CLINT BRAUN,

       Third-Party Defendant,

and

VIVKEKANAND KANCHERLAPALLI
and SHARON KANCHERLAPALLI,

       Counter-Claimants,

v.

BRAUN BUILDERS, INCORPORATED,

       Counter-Defendant.
_____ /

**OPINION AND ORDER RESOLVING MOTIONS IN LIMINE**

Plaintiff Braun Builders' July 24, 2009 amended complaint alleges claims for breach of contract, foreclosure of a construction lien, unjust enrichment, and quantum meruit against Defendants Vivkekanand and Sharon Kancherlapalli, Thumb National Mortgage, LLC, ("Thumb National"), and the U.S. Internal Revenue Service ("I.R.S."). The case was removed to this Court by the I.R.S. The I.R.S. was joined as a defendant because it has asserted a tax lien on the underlying property. Thumb National was also joined as a defendant because of a mortgage lien it holds on the property. The Kancherlapallis own the property, a home on Lake Huron, and were sued by Braun Builders after a dispute arose over a remodeling contract.

The Kancherlapallis also filed a counter-complaint against Braun Builders and a third-party complaint against the company's owner, Clint Braun, on May 28, 2009. The Kancherlapallis' claims against Braun Builders and Clint Braun (collectively "Braun") initially included fraud, defamation of title, violation of the Michigan Consumer Protection Act, and breach of contract. Following the resolution of cross-motions for summary judgment on March 5, 2010 [Dkt. # 63], Braun Builders' contract claim, construction lien foreclosure claim, and unjust enrichment claim remain. Also remaining are the Kancherlapallis' contract claim and fraud in the inducement claim. A jury trial is scheduled to begin on May 25, 2010 at 8:30 a.m.

Now before the Court are six motions in limine filed by Braun Builders, Clint Braun, and the Kancherlapallis [Dkt. # 62, 67, 69–72], and a motion to extend filing dates filed by Braun Builders and Clint Braun [Dkt. # 75]. The motions in limine include Braun's motion to exclude the testimony of Greg Guza [Dkt. # 62]; the Kancherlapallis' motion to exclude time sheets from Braun employees [Dkt. # 67]; Braun's motion in limine to exclude evidence that Clint Braun engaged in fraud [Dkt. # 69]; Braun's motion in limine to excluded the testimony of Clint Braun's wife,

Charlotte Bieri, and limit introduction of evidence concerning her businesses, Seasons Change, Inc. and Seasons Change Home Health Care [Dkt. # 70]; Braun's motion to bifurcate the construction lien act claim [Dkt. # 71]; and Braun's motion to exclude the Kancherlapallis from calling witnesses [Dkt. # 72]. Each motion is discussed separately below.

# I

Braun's first motion in limine seeks to exclude the testimony of Gregory Guza, contending that Guza should not be permitted to testify as an expert at trial because he was not timely disclosed as a witness and an expert report was not provided. The Kancherlapallis' initial disclosures included only one expert witness, Dr. Frank P. Stafford. On February 4, 2010, the Court granted Braun's motion to strike Stafford from the witness list and prohibit his testimony at trial because the expert report required by Federal Rule of Civil Procedure 26(a)(2)(B) and the scheduling order [Dkt. # 30] was not provided on time. The order notes that "expert witnesses may not be called [to testify at trial] unless an expert report is timely provided." Fed. R. Civ. P. 37(c). On January 29, 2010, a month after discovery closed, the Kancherlapallis submitted amended initial disclosures. The amended disclosures included Guza on the witness list for the first time. The Kancherlapallis have not provided a Rule 26(a)(2)(B) report on Guza's testimony, contending instead that he is not an expert witness.

Guza is a general contractor, presumably a licensed professional, from Cass City who has consulted with the Kancherlapallis concerning the cost of finishing the remodeling project and remedying problems allegedly caused by Braun. Guza has built homes in the past and also constructed a medical facility in Caseville. Although Guza was not added to the Kancherlapallis' witness list until January 19, 2010, Sharon Kancherlapalli mentioned his name at her deposition in

October 2009, noting that he had prepared estimates to complete the unfinished remodeling project and conduct necessary repairs. After the deposition, Braun requested documents, e-mails, and other correspondence related to the Guza estimate. When the Kancherlapallis refused to provide those materials, Braun filed a motion to compel discovery on December 15, 2009 [Dkt. # 39]. The motion to compel was granted by Magistrate Judge Binder on January 15, 2010, two weeks before the Kancherlapallis amended their witness list to include Guza as a witness.

Guza's cost estimate [Dkt. # 62-3] indicates that his company, working with a four-man crew, could have completed the work performed by Braun in ten weeks at the cost of $138,000. His estimate further indicates that it will cost $37,675 to repair problems allegedly caused by Braun, and $7,700 to finish a front porch. The estimate contains limited detail. Costs are broken down by item—e.g. "House Demolition"; "Frame all interior and exterior walls"; "Install doors and windows"—but the estimate does not include detailed descriptions of material costs or labor costs. The estimate does not provide information on Guza's estimating methodology, measurements, or assumptions. It is not clear whether the Kancherlapallis consulted with Guza to prepare for litigating this case, or if the consultation was based on a genuine search for a new contractor to complete the job.

As an initial matter, Braun has not challenged Guza's qualifications to testify as an expert or suggested that Guza's estimates are based on insufficient data or unreliable principles and methods. Fed. R. Evid. 702. The only challenge initiated by Braun relates to whether Guza was properly disclosed as a witness under Rule 26.

If Guza were intended as an expert witness, an expert report would have been required by October 30, 2009. The Kancherlapallis concede that they never provided an expert report to Braun.

Indeed, Guza was not disclosed as a witness until January 29, 2010, the same day motions challenging experts were due. Accordingly, pursuant to Federal Rules of Civil Procedure 26(a)(2) and 37(c), Guza may not testify at trial as an expert witness. As a result, if he does testify, he may not provide an opinion that is "based on scientific, technical, or other specialized knowledge." Fed. R. Evid. 701. The question, then, is whether the testimony Guza proposes to provide requires technical or specialized knowledge.

Federal Rule of Evidence 701 was amended in 2000 "to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." Fed. R. Evid. 701 advisory committee notes (2000).

> [A] witness' testimony must be scrutinized under the rules regulating expert opinion to the extent that the witness is providing testimony based on scientific, technical, or other specialize knowledge . . . . By channeling testimony that is actually expert testimony to Rule 702, the amendment also ensures that a party will not evade the expert witness disclosure requirements set forth in Fed. R. Civ. P. 26 . . . by simply calling an expert witness in the guise of a layperson.

*Id.* (citing Gregory P. Joseph, *Emerging Expert Issues Under the 1993 Amendments to the Federal Rules of Civil Procedure*, 164 F.R.D. 97, 108 (1996) ("[T]here is no good reason to allow . . . suprise expert testimony.")).

The rules, then, require courts to distinguish between lay and expert testimony. "[L]ay testimony 'results from a process of reasoning familiar in everyday life,' whereas 'an expert's testimony results from a process of reasoning which can be mastered only by specialists in the field.' " *United States v. White*, 492 F.3d 380, 401 (6th Cir. 2007) (citing *State v. Brown*, 836 S.W.2d 530, 549 (Tenn. 1992)). The distinction, however, is "far from clear." *Id.* Accordingly, a computer technician charged with running commercially available software and analyzing the results is an expert, *United States v. Ganier*, 468 F.3d 920 (6th Cir. 2006), but a physician testifying as to

whether another physician has complied with the norms of professional medical practice is not, *United States v. Wells*, 211 F.3d 988 (6th Cir. 2000).[1]

As the Sixth Circuit has emphasized, the key to making a proper determination is to focus not on the witness, but on the testimony the witness intends to provide. *White*, 492 F.3d at 403. Accordingly, Guza may testify as a lay witness concerning his personal knowledge of the facts of this case. He may testify, for example, that he inspected the house and noted it was missing shingles from the roof, that the interior framing was only partially completed, or that windows in front of the house were eighteen inches from the floor. He may not, however, apply the technical and specialized knowledge he has gained through his years of training and experience as a construction contractor to explain how much it would cost to remedy particular construction defects. Such testimony fits into Rule 702 and requires proper disclosures and an expert report before it will be admitted.

While it is easy enough to articulate the standard, drawing the line between the testimony Guza may offer and that which he may not will be difficult during the trial. Accordingly, it is appropriate to provide some ground rules in advance. Guza may not provide cost estimates for labor and materials already completed or the estimated labor and materials necessary to finish the project to the specifications the Kancherlapallis believed they were purchasing. Guza may testify to facts, including what he observed when he inspected the home, applicable building codes, and general practices in the construction industry. He may not, however, apply those facts to Braun's conduct

---

[1] *Wells* was decided before the 2000 amendments to the rules, and the court did not explicitly hold that the physician's proposed testimony was not expert opinion. Rather, it held that the physician could apply his "specialized knowledge" to his testimony as a fact witness. *White*, 492 F.3d at 491. The 2000 amendments may have demanded a different result.

in this case. For example, he may not testify as to whether, in his opinion, the home in general or particular aspects of its construction comply with code or whether Braun's conduct in bidding and performing the job is in compliance with general industry standards.

In short, to the extent Guza provides opinion testimony, it must be an opinion that is admissible under Rule 701. An opinion that is "(a) rationally based on the perception of the witness, [and] (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Fed. R. Evid. 701. It may not, however, be an opinion "based on scientific, technical, or other specialized knowledge within the scope of Rule 702." *Id.*[2]

Braun also challenges Guza's qualifications to testify as a lay witness under the disclosure provisions of the Federal Rules of Civil Procedure. Rule 26(a)(1) requires the exchange of initial disclosures, including the name and address of every individual a party believes may have discoverable information. It does not require disclosure of lay witnesses. The scheduling order and Rule 26(a)(3) require that lay witnesses be disclosed by March 26, 2010. Guza was identified as a probable witness on January 29, 2010, two months before the deadline. Moreover, Guza was identified as a person who was likely to have discoverable information during Sharon Kancherlapalli's deposition. Accordingly, his identity was "made known" to Braun in October 2009. Fed. R. Civ. P. 26(e)(1)(A). Guza may testify as a lay witness.

## II

The Kancherlapallis first motion in limine challenges the admissibility of time sheets compiled by Braun, contending the time sheets should be prohibited because they were not disclosed

---

[2] Contrary to the Kancherlapallis assertion, the fact that Michigan residents working on their own homes are exempt from laws which require licenses for home builders does not mandate a different result. Mich. Comp. Laws § 339.2403(b); [Dkt. # 64].

until January 28, 2010. [Dkt. # 67]. The Kancherlapallis further contend that there was significant discussion during Clint Braun's deposition about his company's time keeping records and that the "time sheets" were never mentioned. Clint Braun referred only to "invoices" when discussing labor costs. The Kancherlapallis contend that Braun withheld the time sheets in violation of Rule 26(a)(1)(A)(ii), and as a result, they are inadmissible under Rule 37(c). Braun responds that the time sheets were disclosed as soon as they were compiled. *See* Fed. R. Civ. P. 26(e). Braun further contends that outstanding labor charges were included in the initial disclosures and the time sheets are merely supporting evidence.

The motion will be denied. Braun included outstanding labor charges in its initial disclosures. [Dkt. # 68-1]. After the Kancherlapallis challenged the applicable amount during Clint Braun's deposition, the disclosures were supplemented with 320 pages of time sheets pursuant to Rule 26(e). The amount of time required to compile the time sheets was not unreasonable in light of their volume. Moreover, there is no indication that the Kancherlapallis were prejudiced by the disclosure of the time sheets in January. *See* Fed. R. Civ. P. 37(c) (noting undisclosed evidence is admissible if the failure to disclose was "substantially justified or harmless"). The time sheets were disclosed four months before trial, leaving ample time for review before trial.

### III

Braun's next motion in limine seeks to exclude evidence that Clint Braun engaged in fraud. [Dkt. # 69]. The motion contends that testimony suggesting Clint Braun misrepresented the time it would take to complete the project, the cost of the project, or Braun's duty to provide materials for the project should be excluded because the Kancherlapallis fraud claims were dismissed. Only one fraud claim remains—a fraud in the inducement claim related to misrepresentations allegedly

-8-

made with the intent of inducing the Kancherlapallis to enter the contract.

Braun's motion to exclude evidence of fraud apparently arises out of the Court's order granting in part and denying in part Braun's motion for summary judgment. [Dkt. # 63]. In the order, the Court noted that Michigan law prohibits tort claims based on purely contractual duties. Accordingly, the Kancherlapallis cannot recover in tort for their claim that Braun Builders fraudulently misrepresented the scope of the project or the time the project would take to complete because the misrepresentations allegedly occurred in the context of negotiations leading to contractual undertakings. Whether Clint Braun intentionally misrepresented the scope, cost, and time it would take to complete the project or there was merely a breakdown in communication between the parties, is relevant to whether he is personally responsible for the representations, and the Kancherlapallis may inquire into such statements.

**IV**

Braun's next motion in limine asserts that the Kancherlapallis should be prohibited from calling his wife, Charlotte Bieri, because her testimony is not relevant to this case and to the extent it is relevant, it would be more prejudicial than probative. [Dkt. # 70]. The motion is apparently motivated by Braun's concern that questions about a Medicare fraud investigation will be presented to the jury. While the two were on their honeymoon in February 2010, federal authorities executed search warrants at Bieri's business locations as part of an investigation into alleged Medicare fraud. As of May 18, 2010, no charges against Bieri had been made public.

Braun first argues that Bieri's testimony would be irrelevant because her participation in the project was limited and she can recall almost nothing about her participation. Fed. R. Evid. 401. Bieri's participation began when she attended a dinner meeting with the Kancherlapallis and Clint

Braun. Later, one of Bieri's businesses, Seasons Change Home Health Care or Seasons Change Inc., lent money to Braun Builders or at least one of Clint Braun's business after Braun encountered financial difficulties stemming from the Kancherlapalli project. Bieri subsequently sent an e-mail to the Kancherlapallis in an attempt to assist collection on that debt. At her deposition, she repeatedly stated "I can't recall at this time" when asked about the loan transaction and the e-mail she sent to the Kancherlapallis. Indeed, she could not recall the amount of the loan, which of her businesses issued the loan, the name of the borrower, or any specifics of the e-mail to the Kancherlapallis.

Bieri's testimony is relevant. *Id.* It is relevant to the existence of a contract, it is relevant to the amount of the contract, and it is relevant to the manner in which the contract was negotiated. The relevancy threshold is low, and her testimony quite likely will meet it.

Braun next asserts that "even if marginally relevant," Bieri's testimony "should be barred by [Federal Rule of Evidence] 403 as any marginal relevance will be substantially outweighed by the risk of prejudice to Braun if the investigation is even mentioned at trial." The "danger of unfair prejudice" does not "substantially outweigh[ ]" the "probative value" of Bieri's testimony when considered in its entirety. It is, however, appropriate to prohibit inquiries into the alleged Medicare fraud based on Rule 403. The only predicate for its use is to challenge her credibility. Because there is no evidence that the government has any interest in Beiri's businesses beyond asking questions and the allegations are potentially inflammatory, inquiry into the allegations will be prohibited. The probative value of such evidence is substantially outweighed by the risk of unfair prejudice. Fed. R. Evid. 403.

There is an additional barrier to Bieri's testimony against Clint Braun, individually, under

Rule 501 and Michigan's spousal privilege. *See* Mich. Comp. Laws § 600.2162. The Michigan spousal privilege would bar Bieri's testimony against Clint Braun without his consent. There is no indication, however, that it would bar Bieri's testimony against Braun Builders. Neither party's brief acknowledges this issue or provides a suggested way to handle it. Braun's brief merely suggests that the spousal testimonial privilege may apply. The Kancherlapalli brief confuses the spousal communications privilege with the spousal testimonial privilege and contends, erroneously, that the privilege is inapplicable because they were not married at the time the events underlying this case occurred. The parties will be directed to provide additional briefing on the appropriate way to resolve this issue.

V

Braun next moves to bifrucate the construction lien act claim from the rest of the trial because the parties agree on the respective priority of the three liens and the claim is equitable. According to Braun, the parties agree that the Thumb Mortgage lien has first priority, followed by the Braun construction lien, and lastly, the I.R.S. tax lean. The Kancherlapallis object to bifurcation, contending it would be a waste of the parties' time and the Court's resources.

An action to enforce a construction lien is equitable. Mich. Comp. Laws § 570.1118. Moreover, the Court is awaiting a stipulation resolving the priority of the lien claims. Accordingly, it is appropriate to try the contract claims first, and reserve the lien claims for after the trial. At that point, supplemental briefing will be directed if there are disputes about the validity of the construction lien or whether foreclosure of the lien is appropriate. Because those are questions for the Court to resolve, not the jury, it is appropriate to reserve them for after trial. The amount of the construction lien will be depend on the jury verdict.

**VI**

Braun's final motion in limine seeks to exclude the Kancherlapallis from calling witnesses at trial. Braun suggests that the Kancherlapallis should be prohibited from calling any witnesses because they filed the pretrial disclosures required by Rule 26(a)(3) approximately one month late. However, the Kancherlapallis provided supplemental initial disclosures to Braun on January 29, 2010, well ahead of the pretrial disclosure deadline. The supplemental initial disclosures contain a proposed witness list that is essentially identical to the pretrial witness list. Accordingly, the Kancherlapallis late filing is "harmless," and Braun's motion will be denied. Fed. R. Civ. P. 37(c).

**VII**

Accordingly, it is **ORDERED** that Braun's motion in limine regarding Gregory Guza [Dkt. # 62] is **GRANTED IN PART AND DENIED IN PART**. Guza may testify as a lay witness, but he may not provide expert testimony.

It is further **ORDERED** that the Kancherlapallis' motion in limine to exclude evidence of time sheets by Braun [Dkt. # 67] is **DENIED**.

It is further **ORDERED** that Braun's motion in limine regarding "fraud evidence" [Dkt. # 69] is **GRANTED IN PART AND DENIED IN PART**. The Kancherlapallis may present evidence that Clint Braun fraudulently induced the contract with Braun Builders.

It is further **ORDERED** that Braun's motion in limine regarding Seasons Change and Charlotte Bieri [Dkt. # 70] is **GRANTED IN PART AND DENIED IN PART**. Bieri may be called to testify against Braun Builders but not Clint Braun. Inquiries into allegations of Medicare fraud are prohibited. Both parties are **DIRECTED** to submit a proposed limiting instruction and supporting brief no longer than five pages, outlining legal issues related to Bieri's testimony under

the Michigan spousal privilege on or before **May 20, 2010**.

It is further **ORDERED** that Braun's motion to bifurcate the construction lien act claim [Dkt. # 71] is **GRANTED**. The I.R.S. and Thumb National will not be required to participate in the trial.

It is further **ORDERED** that Braun's motion in limine regarding the Kancherlapallis' witness list [Dkt. # 72] is **DENIED**.

It is further **ORDERED** that Braun's April 28, 2010 motion regarding the joint final pretrial order [Dkt. # 75] is **DENIED AS MOOT** in light of the Court's April 30, 2010 order [Dkt. # 79] amending the scheduled dates.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: May 18, 2010

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 18, 2010.

s/Tracy A. Jacobs
TRACY A. JACOBS

---