UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

BRAUN BUILDERS, INC.,

       Plaintiff,

v.

       Case Number 09-11534-BC
       Honorable Thomas L. Ludington

VIVKEKANAND KANCHERLAPALLI,
SHARON KANCHERLAPALLI, THUMB
NATIONAL MORTGAGE, LLC, and
U.S. INTERNAL REVENUE SERVICE,

       Defendants,

and

VIVKEKANAND KANCHERLAPALLI
and SHARON KANCHERLAPALLI,

       Third-Party Plaintiffs,

v.

CLINT BRAUN,

       Third-Party Defendant,

and

VIVKEKANAND KANCHERLAPALLI
and SHARON KANCHERLAPALLI,

       Counter-Claimants,

v.

BRAUN BUILDERS, INCORPORATED,

       Counter-Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANTS' MOTION TO STAY, GRANTING
IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR A NEW TRIAL,**

# JUDGMENT AS A MATTER OF LAW, AND AN AMENDED JUDGMENT, DENYING PLAINTIFF'S MOTION TO ENFORCE JUDGMENT BY STOCK SALE, AND DENYING DEFENDANTS' MOTION FOR A PROTECTIVE ORDER

Plaintiff Braun Builders, represented by its owner and manager Clint Braun, entered into a contract with Defendants Vivkekanand and Sharon Kancherlapalli in September 2007 to remodel the Kancherlapallis' Caseville, Michigan home. Plaintiff agreed to remodel the home in a "workmanlike manner" and in "conformance with the plans [and] specifications." The contract indicated that construction would be completed in ninety days. In return, Defendants agreed to pay Plaintiff $285,690 for the remodeling work. The contract did not, however, contain a detailed description of the construction plans, nor include any blueprints or design sketches as attachments. When the work was partially completed, a dispute arose about the scope of the project, Defendants refused to provide additional installment payments, Plaintiff "closed in" the project, and stopped work.

At the time construction stopped, Plaintiff had been paid $88,762.33. On May 15, 2008, Plaintiff filed a construction lien against the property for $142,953.67. Plaintiff contended that Braun Builders was entitled to an additional $42,641.05 for materials and $100,311.62 for labor. In March 2009, Plaintiff filed a complaint against Defendants for breach of contract and foreclosure of the construction lien. Defendants filed a counter-claim against Plaintiff and Clint Braun for breach of contract and fraud in the inducement. In March 2010, the Court denied the parties cross-motions for summary judgment, concluding that the scope of the contract was an issue of material fact for the jury to decide. Following a May 2010 trial, the jury found in favor of Plaintiff and awarded Braun Builders $172,500 in damages. On August 11, 2010, the Court entered a judgment in favor of Plaintiff and against Defendants for $215,919.71, which included the jury award, interest,

and statutory attorney fees.

After the judgment was entered, the parties filed several post judgment motions and other requests. Defendants filed a motion to stay the proceedings, pending the resolution of an expected motion for a new trial; a motion for a new trial; and an "emergency" motion for a protective order. Plaintiff filed a motion to enforce the judgment by stock sale, as well as several requests to seize various assets in an attempt to enforce the judgment. Also pending is Plaintiff's proposed order directing foreclosure and sale of the residence pursuant to the construction lien.

## I

On August 24, 2010, Defendants filed a motion to stay the proceedings for enforcement of the judgment pending resolution of their motion for a new trial. Fed. R. Civ. P. 62(b). The Federal Rules of Civil Procedure permit a court to stay such proceedings, but require "appropriate terms for the opposing party's security." *Id.* In most circumstances, a party moving to stay enforcement of a judgment will post a bond. *See New Burgh/Six Mile Ltd. P'ship v. Adlabs Films USA, Inc.*, NO. 09-CV-11067, 2010 WL 3167393, at *1 (E.D. Mich. Aug. 9, 2010) (noting that bonds are presumptively required before a Rule 62 motion will be granted); *Hamlin v. Charter Twp. of Flint*, 181 F.R.D. 348, 351 (E.D. Mich. 1998) (noting a bond "is almost always required" before granting a stay of judgment pending appeal). In this case, Defendants provided a certified letter from Rick Nassenstein, the chief financial officer of American Diagnostic Medicine, Inc., indicating that Defendant Vivkekanand Kancherlapalli has access to a bank account containing $230,000. Defendants did not, however, post a bond.

As an initial matter, this Opinion and Order resolves Defendants' motion for a new trial and the Court will enter an amended judgment. As a result, the motion for a stay is moot. The motion

would, however, be appropriately denied on the merits. Defendants are entitled to a stay of proceedings to enforce a valid judgment only if they post a full bond to ensure Plaintiff is paid if the judgment is affirmed. *See Am. Mfrs. Mut. Ins. Co. v. Am. Broad.-Paramount Theatres, Inc.*, 87 S. Ct. 1, 3 (1966) (Mem. Op.) (Harlan, J.). Here, the only "security" offered by Defendants is a letter making an unsupported assertion that Defendants have access to funds to pay the judgment. Even if, as Defendants emphasize, the Court has the "discretion" to grant a stay in this circumstance, it would not be prudent to do so. A stay requires more than proof that the Defendants can pay; it requires a promise to pay in the event the judgment is affirmed. Accordingly, the motion for a stay will be denied.

## II

On September 7, 2010, Defendants filed a motion for a new trial, or in the alternative, an amended judgment with a reduced damage award. Fed. R. Civ. P. 59. Defendants have also renewed their pretrial motion for judgment as a matter of law. Fed. R. Civ. P. 50(b). Defendants contend that a new trial is merited because the award of damages was "excessive and not supported by the evidence"; the verdict was "against the great weight of the evidence"; the court improperly excluded some of Defendants' proposed witnesses; there were prejudicial errors in the jury instructions concerning damages; newly discovered evidence warrants a new trial; and that Defendants are entitled to judgment as a matter of law.

A court may grant a Rule 59(a) motion for a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). Generally, Rule 59 provides district court judges with "broad discretion." *In re Saffady*, 524 F.3d 799, 808 (6th Cir. 2008). A new trial is appropriate when the jury reached "a 'seriously erroneous

result' as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, i.e., the proceedings being influenced by prejudice or bias." *Holmes v. City of Massillon*, 78 F.3d 1041, 1045–46 (6th Cir. 1996) (citing *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940), *Cygnar v. City of Chicago*, 865 F.2d 827, 835 (7th Cir. 1989), and *Mallis v. Bankers Trust Co.*, 717 F.2d 683, 691 (2d Cir. 1983)). Ultimately, "[t]he governing principle in the Court's acting on a motion for new trial is whether, *in the judgment of the trial judge*, such course is required in order to prevent an injustice; and where an injustice will otherwise result, the trial judge has the duty as well as the power to order a new trial." *Saffady*, 524 F.3d at 808 (quoting *Davis by Davis v. Jellico Cmty Hosp. Inc.*, 912 F.2d 129, 133 (6th Cir. 1990) (emphasis added)).

A court may grant a Rule 59(e) motion to amend a judgment if "there is (1) a clear error of law; (2) newly discovery evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005) (citing *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999)).

A court may grant a motion for judgment as a matter of law if it determines that there is no "legally sufficient basis" to find for the non-moving party on that issue. Fed. R. Civ. P. 50(a)(1). This Court must "direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict" or if there is insufficient evidence to create a genuine issue of fact for resolution by a jury. *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986). Importantly, the Court "may not weigh the evidence or make credibility determinations, as these are jury functions." *Jackson v. Quanex Corp.*, 191 F.3d 647, 657 (6th Cir. 1999). Stated otherwise, if after viewing the evidence in the light most favorable to the non-moving party, "a reasonable trier of fact could draw

only one conclusion," judgment should be granted for the moving party. *Am. & Foreign Ins. Co. v. Bolt*, 106 F.3d 155, 157 (6th Cir. 1997); *Jordan v. City of Cleveland*, 464 F.3d 584, 594 (6th Cir. 2006) *Sniecinski v. Blue Cross & Blue Shield of Mich.*, 666 N.W.2d 186, 192 (Mich. 2003). In a diversity case where the moving party has challenged the sufficiency of the evidence, the court should "appl[y] the standard of review used by the courts of the state whose substantive law governs the action." *Morales v. Am. Honda Motor Co.*, 151 F.3d 500, 506 (6th Cir. 1998).

**A**

Defendants first contend that they are entitled to a new trial because the jury reached a "seriously erroneous result" in awarding "excessive damages." A court will review the damages awarded by a jury to determine whether the amount "shocks the judicial conscience, appears unsupported by the proofs, or seems to be the product of improper methods, passion, caprice, or prejudice; if the amount awarded falls reasonably within the range of the evidence and within the limits of what reasonable minds would deem just compensation for the injury sustained, the verdict" will be sustained. *Precopio v. City of Detroit*, 330 N.W.2d 802, 805 (Mich. 1982). If a court determines that a damage award is excessive, it may grant a new trial or, in a case where the "defects in the award are readily identified and measured," it may simply reduce the jury award. *Stickland v. Owens Corning*, 142 F.3d 353, 359 (6th Cir. 1998).

Defendants contend that the jury award is unsupported by the evidence because Plaintiff only requested $142,953.67 and there is no evidence that Plaintiff was entitled to more than that. Plaintiff admits that it only requested $142,953.67 in damages, but contends that the jury heard evidence at trial that Plaintiff only sought his out-of-pocket damages and no compensation for acting as a general contractor. In addition, Plaintiff contends that the jury learned that Plaintiff only billed

Defendants for 3,185.5 hours of labor even though it could have billed for 3,263. Plaintiff similarly contends that the jury learned that Plaintiff billed for Clint Braun's time at $26.50 per hour when he usually charges $30.00 per hour. Finally, Plaintiff contends that evidence was presented to the jury of invoices from a building supplier that were not billed to Defendants. According to Plaintiff, "while it was requested that the jury simply pay what was due, it is entirely possible that the jury determined that Plaintiff did not charge enough for the construction performed."

Plaintiff essentially admits that the jury awarded more than Plaintiff requested. In a case based on the principles of contract law, an award of more than was sought is legally unsupportable. Plaintiff appropriately emphasizes the need to give deference to the jury verdict, but the Court cannot give deference to an award that is not supported by the evidence in the record. *In re Lewis*, 845 F.2d 624, 635 (6th Cir. 1988). Here, Plaintiff specifically asked the jury to award $142,953.67, and Plaintiff presented the jury invoices and other records substantiating the amount requested. Plaintiff billed Defendants for $142,953.67, and Plaintiff secured a construction lien on the property for $142,953.67. There is no justification for an award that includes an additional $29,546.33.

It may be that the jury determined, as Defendants suggest in their motion, that Plaintiff is entitled to recover for his legal expenses. Such a determination would, however, be contrary to the law. It may also be that individual jurors relied on their knowledge of the construction industry and elected to award a Plaintiff a general contractor's fee for his work on the project. Although Plaintiff may have been entitled to such a fee and the amount of damages is consistent with such a fee, he did not present evidence concerning lost profits or general contractor's fees and the jury was not entitled to award such a fee based on their general knowledge. Accordingly, the jury award is unsupported by the evidence.

The question becomes whether the Court should reduce the damages through remittitur or whether a new trial should be held on the single issue of damages. In this case, the "defects in the award are readily identified and measured." *Stickland*, 142 F.3d at 359. Accordingly, the damage award will be reduced by order of the Court.

Defendants contend a reduced verdict is not appropriate in this case because it is impossible to determine why the jury awarded $172,500. Defendants suggest, for example, that the jury could have intended the $172,500 to represent $100,000 for contract damages and $72,500 for attorney fees. Defendants contend that they are entitled to a new trial because it is impossible to ascertain how the jury reached the award it did. However, the jury found in favor of Plaintiff on its contract claim and the Plaintiff is entitled to the benefit of its bargain—a benefit that can be clearly and easily measured in this case. Plaintiff presented clear evidence that it performed $231,716 of contractually authorized work and Plaintiff was only paid $88,762.33. Plaintiff is entitled to $142,953.67 in damages and a new trial is unnecessary.

Amending the amount of the judgment will also require recalculation of prejudgment interest. *See* Mich. Comp. Laws § 600.6013. The interest do is as follows:

- April 1, 2009 through June 30, 2009: 91 days at 3.695% = $1,313.35
- July 1, 2009 through December 31, 2009: 184 days at 3.101% = $2,234.71
- January 1, 2010 through June 30, 2010: 181 days at 3.48% = $2,466.95
- July 1, 2010 through November 29, 2010: 151 days at 3.339% = $1,974.68

The total prejudgment interest due is $7,989.69.

**B**

Defendants next contend that they are entitled to a judgment notwithstanding the verdict or

a new trial because Plaintiff undertook the construction with an incomplete building permit. Defendants previously raised the issue in a Rule 50(a) motion that was denied by the Court on May 20, 2010. The Court analyzed that motion as follows:

> The Kancherlapallis assert that Braun Builders and Clint Braun stopped work on their home in February 2008 and recorded a construction lien on the home on May 15, 2008. Despite the obvious breakdown in the relationship between the parties, the Kancherlapallis contend that Braun Builders and Clint Braun fraudulently claimed to be the Kancherlapallis' contractor on June 19, 2008, when an application for an updated building permit was submitted. The Kancherlapallis claim they do not owe Braun Builders any amount of money because the work that Braun Builders allegedly performed pursuant to change orders or additions to the original contract was outside the scope of the original building permit, and the fraudulently obtained June 19, 2008 building permit did not confer any rights at all. *Twp. of W. Bloomfield v. Chapman*, 351 Mich. 606 (1958).
> 
> While it is true that Michigan law prohibits altering or constructing a structure without a building permit, Mich. Comp. Laws §§ 125.1511–.1512, the Kancherlapallis offer no legal authority for the proposition that they are entitled to such a remedy. Whatever harm Braun Builders caused by allegedly performing work that went beyond the scope of the original building permit, permitting the Kancherlapallis to retain the benefit of that work without providing anything to Braun Builders and Clint Braun in return, is not the appropriate solution. Braun Builders may have undertaken the obligation to obtain a building permit, but ultimately, the duty to attain the permit is on the landowner and not the contractor. Landowners are "presumed" under the law to have "consented" to all construction work taking place on their property. Mich. Comp. Laws § 125.1512(2).

[Dkt. # 103].

Plaintiff has still not provided any legal authority in support of its assertion that Defendants were entitled to simply walk away from the contract and their obligations to Plaintiff based on an alleged defect in the building permit. Michigan law requires a valid building permit for construction projects, like the one that occurred in this case, but there is no legal authority for Defendants' suggestion that consumers who contract for construction work on their home are not bound by the contract if there was a defect in the building permit obtained by the contractor. Moreover, Plaintiff advanced compelling evidence that Defendants' assertions about their intended use of the

improvements was the reason they advanced the information they did to the building authorities. Accordingly, Defendants' renewed motion for judgment as a matter of law or a new trial must be denied on this basis as well.

## C

Defendants next contend that they are entitled to a new trial because the Court abused its discretion when it barred Defendants from calling three rebuttal witnesses—Bernard Pine, Aaron Karr, and Tip MacGuire. The Court also denied Defendants' May 19, 2010 motion to amend their pretrial disclosures and add Bernard Pine to the witness list for their case in chief. Defendants proposed to call the three witnesses to testify that an addition Plaintiff added on the lakeside of Defendants' home was built on top of the septic system's drain field. The Court denied Defendants' motion to call Pine during the case in chief because he was not disclosed as a witness in Defendants' initial disclosures or pretrial disclosures. Fed. R. Civ. P. 26(a)(1) & (3). The Court prohibited Defendants from calling the witnesses as rebuttal witnesses because it determined that the evidence, although possible to classify as impeachment evidence, was actually being advanced shortly before trial as one of the key justifications for Defendants not paying the Plaintiff.

Defendants sought to prove during their case in chief that Plaintiff breached the construction contract because he did not perform the work in a "workmanlike manner" as the contract required. They sought to prove the breach by demonstrating, inter alia, that the addition was constructed on top of the septic field. Defendants encountered a significant problem, however, when it became clear that they had never made the assertion before, and as a result, they had not included a single witness in their initial disclosures or pretrial disclosures who had personal knowledge as to whether the addition was actually on top of the septic field. By contrast, Plaintiff had two witnesses with

personal knowledge about the location of the septic field—Clint Braun and an excavator named Tate—who both testified that the addition was not located on top of the septic field.

Accordingly, after the testimony was closed, Defendants sought to call Pine, Karr, and MacGuire to testify that the addition may have been on top of the septic field, ostensibly to impeach Braun and Tate's testimony that it was not. The Court excluded the testimony, concluding that it was nothing more than an attempt to include undisclosed witnesses through the back door. Witnesses may only offer rebuttal testimony if the testimony is "solely for impeachment." Fed. R. Civ. P. 26(a)(3)(A). Moreover, a party is not excused from the disclosure requirements because it "has not fully investigated the case." Fed. R. Civ. P. 26(a)(1)(E). Defendants had an opportunity to investigate Plaintiff's workmanship and develop proofs concerning any defects. The Court determined that the Defendants should not be permitted to begin that process a week before trial, and excluded the testimony of Pine, Karr, and MacGuire. No matter how Defendants characterize those witnesses, their testimony was not "purely for impeachment purposes" and therefore was properly excluded.[1]

**D**

Defendants also contend that they are entitled to a new trial because there was a prejudicial error in the jury instructions concerning damages. The disputed instruction provided:

> If you find the Kancherlapallis have proved their contract claim by a preponderance of the evidence, you should award them an amount of money equal to the contract price the Kancherlapallis agreed to pay of $285,690, less the amount they have

---

[1] Nor does Defendants' contention in regard to the septic system entitle them to a new trial as "newly discovered evidence." Although septic systems are underground, their locations are not particularly difficult to ascertain. The location of the septic system in relation to the addition could have been determined, with due diligence, long before trial and Defendants' lack of diligence in that regard does not entitle them to a second chance with a jury.

> already paid of $88,762.33, and less the cost of completing the project, which you must determine. That is, $196,927.67 less what you determine to be the cost of completing the project. If the result is a negative number, you should award that amount to the Kancherlapallis. If the result is a positive number, you should award that amount to Braun Builders.

Defendants contend that the instruction should have provided a different formula. Defendants contend that the correct measure of damages, in the event the Kancherlapallis would have prevailed on the contract claim, is the difference between the value of the building as contracted for and the value of the building as constructed. *Eaton v. Gladwell*, 80 N.W. 292 (Mich. 1899). Defendants further argue that the instruction, as given, created a false impression that Plaintiff would prevail regardless of whose version of the facts the jury believed.

As an initial matter, Defendants did not prevail on their contract claim. Accordingly, the accuracy of the instruction is irrelevant. More importantly, the instruction is accurate and employs exactly the formula that Defendants requested. If Defendants would have prevailed on their contract claim, they would have been entitled to the benefit of their bargain, which was, in monetary terms, the value added to their home by the contracted for project in exchange for the contracted for price. The only evidence of the value added by the project, however, was the face value of the contract. There was no evidence, in the form of an expert opinion, for example, that the value of the improvements was greater than their cost. If Defendants would have prevailed, they would have been entitled to contractual improvements at the contractual price.

If, for example, the jury found in favor of Defendants on their contract counter-claim and further determined that the cost of completing the project was $200,000, Defendants would have been entitled to an award of $3,073.33 and Plaintiff would have received nothing. [$285,690 – $88,762.67 – $200,000 = ($3,073.33)]. The formula was accurately set forth in the instruction.

-12-

There is no support for Defendants' assertion that they were entitled to the value of the improvements as contracted for without meeting their end of the bargain and paying for the improvements.

## III

On September 23, 2010, Plaintiff filed a motion for enforcement of the judgment through the sale of stock Defendant Vivkekanand Kancherlapalli owns in an Illinois corporation. Plaintiff contends it is entitled to a court-ordered sale of the stock pursuant to Michigan Compiled Laws § 600.6104. The cited statute pertains to actions brought in Michigan state courts to enforce a judgment that was earlier entered in a different court. It is not clear if or how it applies to execution of a judgment. Mich. Comp. Laws § 600.6001. Moreover, two separate motions for a stay of execution and a motion for a new trial were pending when the Plaintiff sought the Court-ordered stock sale. Additionally, an amended judgment will be issued pursuant to this opinion and order, making the Court-ordered sale of stock premature. Accordingly, Plaintiff's motion for a Court-ordered stock sale will be denied.

On a related matter, Defendants filed an "emergency" motion for a protective order on September 28, 2010, asking the Court to stay execution of the judgment pending resolution of the motion for a new trial. That motion for a new trial has now been resolved and the motion for a protective order is moot. Moreover, the Court will not stay execution of the judgment without a bond in this case. *See Infra*, Part I. Accordingly, the "emergency" motion for a protective order will be denied.

## IV

The final issue before the Court is Plaintiff's proposed order of foreclosure and sale of the

property which was submitted pursuant to the Court's directions. The Court has also received Defendants' objections. Plaintiff did not file a reply to Defendants' objections.

Defendants first object that the redemption period specified in paragraph 4(j) of the proposed order is only 30 days even though the statute authorizes up to four months. A four-month redemption period is longer than necessary, but the redemption period will be extended to 90 days pursuant to Defendants' objection. Accordingly, the objection will be sustained in part and the redemption period will be extended to 90 days.

Defendants next object to paragraphs 3, 5, and 6, contending that the procedures contained in those paragraphs are not authorized by the Construction Lien Act, Mich. Comp. Laws §§ 570.1101–.1305. The disputed paragraphs purport to provide for the immediate objection of anyone living in the home, the removal of personal property from the home, and the preservation of the property pending sale. Plaintiff did not cite any statutory authority in support of the proposed language. Accordingly, the Court will direct the sale of the property to occur in accordance with Michigan law, but, without specific authority provided by Plaintiff, it will not direct the eviction of the home's inhabitants or provide a specific deadline for removal of Defendants' personal property. Accordingly, the objection will be sustained and paragraphs 3, 5, and 6 will be stricken from the proposed order. Instead, the Court will include an instruction directing that the sale be carried out in accordance with state and federal law.

Defendants next object to the use of the word "may" in paragraph 8 of the proposed order and suggest the use of the word "shall" instead. Defendants contend that to the extent Plaintiff receives proceeds from the sale of the property, those proceeds should be directed toward satisfaction of the money judgment. The objection will be sustained. Proceeds from the sale of the

property that are received by Plaintiff "shall" be applied to the satisfaction of the money judgment entered in this case.

Defendants' final objection relates to the citation to a federal statute contained in the preamble to the proposed order. Defendants contend that reference to the statute is unnecessary and contrary to the Court's earlier order granting Plaintiff's motion for foreclosure and sale of the property. The citation at issue directs observers to the portion of the United States Code that applies generally to realty sold under order of a United States District Court. 28 U.S.C. §§ 2001–2002. The statue, by its own terms, applies to "[a]ny realty or interest therein sold under any order or decree of any court of the United States." 28 U.S.C. § 2001. Accordingly, the statute applies to the realty sale in this case. Although citation to the statute may be unnecessary, it is not prejudicial. The objection will be overruled.

## VI

Accordingly, it is **ORDERED** that Defendants' motion for a stay of enforcement of the judgment [Dkt. # 122] is **DENIED**.

It is further **ORDERED** that Defendants' motion for a new trial, renewed judgment as a matter or law, and for an amended judgment [Dkt. # 132] is **GRANTED IN PART AND DENIED IN PART**. An amended judgment will be issued in accordance with this order.

It is further **ORDERED** that Plaintiff's motion to enforce the judgment by stock sale [Dkt. # 143] is **DENIED**.

It is further **ORDERED** that Defendants' motion for a protective order [Dkt. # 145] is **DENIED**.

It is further **ORDERED** that an order directing foreclosure and sale of the real estate

underlying this case will be entered separately.

It is further **ORDERED** that the parties papers adequately set forth the facts and law. Accordingly, the hearing scheduled for November 29, 2010 was canceled.

<pre>
                                        s/Thomas L. Ludington
                                        THOMAS L. LUDINGTON
                                        United States District Judge
</pre>

Dated: November 29, 2010

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 29, 2010.

<pre>
                              s/Tracy A. Jacobs
                              TRACY A. JACOBS
</pre>